[Civ. No. 18223.   First Dist., Div. One.   May 27, 1959.]

ARTHUR DUSSAULT et al., Appellants, v, GEORGE CON-
DON, as Sergeant of Police of the City of San Mateo,
et al., Respondents.

694

E. C. Mahoney for Appellants.

Hancock, Elkington & Rothert and Wayne D. Hudson for Respondents.

HANSON, J. pro tem.*—This is an action for false arrest and false imprisonment brought by two minor plaintiffs by

*Assigned by Chairman of Judicial Council.

their father as guardian *ad litem* against two police officers of the City of San Mateo. After a trial by jury a verdict was returned in favor of both defendants. The plaintiffs appeal alone from the judgment entered on the verdict in favor of Condon.

The errors assigned by the appellant's opening brief are three in number, but in the closing brief these are reduced to one, in effect, as the appellants say: "This case boils down to the question whether the offense in this case was committed 'in the presence' of the police officer. If it was not, he had no right to make the arrest."

The facts necessary to be considered in reaching a conclusion on the errors assigned are as follows:

On August 4, 1956, the two minors (aged 15 and 14) with their father were in attendance at the Bay Meadows Race Track where the father had entered two horses for racing. He left the boys at the clocker's booth on the barn side of the track while he himself went to the grandstand area. The inside of the booth was about 6 by 15 feet. It stood raised above the ground about 5 feet to the bottom of its floor. There are windows on three sides and a door opening to stairs which connect it to the ground on the fourth side.

On the day in question the defendant Condon was on duty patrolling the premises as a police officer. While thus engaged, a person unknown by name to him complained that there were three hoodlums cursing and raising a rumpus in the clocker's booth. As Condon proceeded on his way to the booth another man and his wife stopped to tell him that three boys in the booth were using loud profanity and when the man asked them to stop he was greeted with "Go to hell." It is undisputed that women and children were in the immediate vicinity at the racing rail. As Condon neared the booth he heard yelling, loud talking, and profanity emanating from the booth and through the door he observed a boy poised to throw a rock and another boy was heard to say "Damn you, put it down." The rock was thrown and instantly followed by a profane remark. Condon then called to the occupants of the booth to come down and a boy by the name of Gary Valine did so; the two Dussault minors did not, but instead "talked back" to the officer. On the officer's statement that if they did not come down he would go up after them they came down. When he ordered all three boys to leave the premises the Valine boy left but the Dussault boys refused. As a result he advised

them they were under arrest and to accompany him. This they refused to do and were then placed in a patrol car driven by the defendant Hegedus and thereafter jailed for breach of the peace.

The main question in this case, as the appellants concede, is whether a misdemeanor was being committed in the presence of the arresting Officer Condon. The appellants contend, in effect, that the arrests were made, not on what took place in the presence of the officer, but rather on the information given him by the informers, and that such information was hearsay and was objected to on that ground at the trial.

The difficulty with appellants' position in that regard is twofold. ▉ *First*, by inquiring of defendant Condon, whom they called to the stand as an adverse party under Code of Civil Procedure, section 2055, they elicited from him that his attention had been called to a disturbance in the vicinity of the clocker's shack by a gentleman who came to the headquarters of the police for the purpose of making a complaint; that he did not know his name; that he had seen him before; that he thought he was a horse trainer. By the questions which elicited this testimony, counsel for the appellants opened the case for the questions which were then put to him by Condon's own counsel as to what the informer had said to him in making the complaint, and what another informer had told him enroute to the clocker's booth. (See Code Civ. Proc., § 1872; 7 Wigmore, Evidence (3d ed. 1940), § 2113.)

*Second*, the further answer to the appellants' contention is, that regardless of what the informers said to Condon the evidence showed the arrest was not made upon the basis of the complaints by the informers, but upon what actually occurred in the presence of Condon, which, in fact, constituted a misdemeanor.

The further contention of the appellants that what the informers said to Condon was hearsay and accordingly inadmissible is not correct. ▉ In this state, as elsewhere, it is a well established rule of law that testimony not offered to prove the truth of the matter it asserts is not objectionable as hearsay (*People* v. *Fischer*, 49 Cal.2d 442, 446 [317 P.2d 967]; *Smith* v. *Whittier*, 95 Cal. 279, 293 [30 P. 529]; 6 Wigmore, Evidence (3d ed. 1940), § 1789. ▉ The court admitted the testimony of which complaint is made in order to show all the circumstances surrounding the arrest. And the testimony was admissible as having a bearing upon the reasonableness of Condon's act in arresting the Dussault boys. That is

to say, that testimony was not admitted to show that there was a disturbance in the clocker's shack, for that fact was observed by Condon himself; rather, it was admissible to show that Condon believed three boys were involved and when he found but three boys at the shack (others having gotten out through a window according to appellants' testimony), he could reasonably believe they were the only ones disturbing the peace in his presence.

█ Regardless of whether the information was true or false it was the duty of Condon to investigate whether the plaintiffs were or were not still, as reported, in the act of violating the law. If he personally found they were, based upon his own knowledge ascertained at the scene, it was his duty to suppress immediately the violation of the law, and if need be, to arrest and imprison the culprits.

The contention of the plaintiffs that the policeman arrested them on the basis of what he heard from the informers and not on what he himself saw and heard has not a shred of evidence to support it. █ Moreover, the jury was specifically instructed by the trial judge that they could not base their verdict, in whole or in part, on what the informers had said, but solely on what Condon saw or heard. Hence, any error, if error there be, in admitting the information received by Condon from the informers, was in effect abrogated by the court's instruction to the jurors.

The testimony given by Condon as to what he personally saw and heard was adequate to sustain the verdict.

The appellants contend that the instructions Numbers 6, 8, and 10 given by the court are contrary to the law of California, but we are not directed to any law or case so holding. The instructions as given were based on *Coverstone* v. *Davies* (1952), 38 Cal.2d 315 [239 P.2d 876]. Plaintiffs also contend that their requested instruction Number 9 should have been given, but the latter on the facts was not germane. █ We have read the instructions and find no error except in the use of the past tense rather than the present tense in instruction Number 10, but that was sufficiently cured by the other instructions given and so could have no prejudicial effect.

Affirmed.

Bray, P. J., and Wood (Fred B.), J., concurred.